UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BOBBY EDWARD WALKER                                                                  PLAINTIFF

V.                                                                                          1:08CV292-NBB-JAD

JIM H. JOHNSON, ET AL.                                                              DEFENDANTS

REPORT AND RECOMMENDATION

The undersigned held an evidentiary hearing in this action on April 28, 2010. Bobby Edward Walker filed suit complaining about jail conditions and treatment he received during multiple stints at the Lee County Jail beginning in 2002. At the evidentiary hearing Walker limited his proof to claims for being placed in "lock-down," for excessive use of force and denial of medical care.

Walker called Officer Thomas Pearce with the Lee County Sheriff's Department. Walker's complaint alleged that he was attacked by the defendant Mitchell Bridges in November, 2008. He alleges that Bridges choked him and slammed him onto the concrete floor. He claimed his forehead and lips were lacerated and his teeth loosened as a result. He also claimed to have suffered some loss of consciousness during and following the attack. Pearce did not remember any unusual incident involving Walker. He did not witness Walker injured, bleeding or lying unconscious on the floor. The only knowledge he had of an alleged incident involving Walker and Bridges was gleaned from an incident report on the matter. He denied that the defendant Chris Nolden said he did not care if Walker was hurt. Nor did Nolden say Walker was not going to the hospital regardless of his injuries.

Officer James Herbert did not witness Walker with the claimed injuries after the Bridges incident. He did not find him bleeding and unresponsive in his cell. The defendant Nolden never said that he did not care if Walker was hurt. Nolden never said Walker was not going to see a doctor in spite of his injuries.

Officer Mark Covington let Walker out of his cell for his three hours of exercise. When he went to return Walker to his cell, Walker told Covington he was unhappy about being in lockdown and wanted to be assigned new housing. Covington summoned Bridges, the on-duty shift supervisor, to talk to Walker. Bridges listened to Walker for about 15 minutes. Bridges made several requests to Walker to return to his cell. After Walker still did not return to his cell, Bridges "made an open-handed suggestion" that Walker return to his cell and Walker resisted. When Walker jerked away, raising his hand to the officer, Bridges took Walker to the ground and Covington handcuffed him. Walker was somewhat uncooperative in returning to the cell, but was never unconscious and showed no signs of any injury. The plaintiff walked upstairs to his cell with the officers. Covington and Bridges placed Walker on the floor of his cell to remove the cuffs. Walker was told to remain on the floor until Bridges and Covington exited the cell. No unnecessary force was employed. Bridges neither choked Walker nor slammed him against the floor. Covington never saw Walker with any laceration on his face. Walker did not request medical treatment.

Former officer Chris Nolden was the shift supervisor during the shifts preceding and following the alleged attack by Bridges. When Walker was brought to the Lee County Jail from the Alcorn County Jail, Nolden assigned him, not to lock down as Walker claimed, but to protective custody. Because he was in protective custody, Walker was allowed three hours out of his cell for exercise. His exercise would have been limited to one hour had he been in

disciplinary lockdown.  Walker had been in the jail on other occasions and his behavior had caused problems when he was placed in general population.  During a previous stay in general population Walker had jumped on other inmates while they were trying to sleep.  Because of his problems interacting with other prisoners Walker needed to be in protective custody to make sure that he was not assaulted.  Nolden testified that neither Pearce nor Herbert told him after the alleged attack that Walker was unresponsive and bleeding.  He did not say he did not care whether Walker was injured.  He never told Pearce or Herbert "he can just lay there."  If he had seen Walker injured, he would have had him checked by a nurse. If there was an apparent life-threatening injury, Nolden would have called EMTs to the jail.

Mitchell Bridges testified that he was summoned to the outside of Walker's cell by Officer Covington.  Walker was complaining about being in "lock down" and was refusing to return to his cell.  Bridges was the shift supervisor at the time of the alleged attack.  Bridges listened to Walker's complaints for some ten minutes or more.  When Walker started repeating himself, Bridges told Walker to return to his cell several times.  Walker did not comply.  Bridges then made an "open handed suggestion" that Walker return to his cell.  This involved waving with an open palm toward the cell and touching Walker on the shoulder in an attempt to get him to comply.  When Walker jerked away, Bridges took Walker to the floor and held him down while Covington hand-cuffed him.  Both officers then assisted Walker to his feet and took him back to his cell. When they arrived at the cell, both officers took Walker into the cell and placed him on the floor.  Bridges told Walker he was to remain on the floor until the two officers were out of the cell and the door closed.  Walker acknowledged and complied with this instruction. Bridges denied that he choked Walker, that Walker was injured in the take down, or that Walker was deprived of requested or needed medical care.

Nurse Dorothy McDaniel testified to her dealings with Walker including his report to her that he had been choked. When Walker reported that his throat was sore as a result of the choking, she referred him to and he was seen by a nurse practitioner. He was also later seen for this complaint by a physician.

Both Sheriff Johnson and Tony Carlton, his former jail adminstrator and the current Tupelo Chief of Police, testified that they did not know Walker personally and had no knowledge of the alleged incident prior to the litigation.

Dr. Mark Webb, who was present as an expert witness for the defense, was called by Walker. He testified to his review of Walker's medical records. Walker has a long history of serious mental illness dating back to the 1990's. He has various diagnoses including paranoid schizophrenia with antisocial tendencies. Per Webb, he clearly is suffering from psychosis and is subject to suffering auditory hallucinations. He has received treatment and medications for his mental difficulties while in the Lee County Jail.

Webb noted Walker's complaint claimed he was placed in protective custody at his own request. Inmates with mental illness frequently do request protective custody. Webb would not recommend housing Walker in general population. Protective custody protects other inmates from possible actions by the plaintiff as a result of paranoid hallucinations and protects the plaintiff from the abuse mentally ill inmates frequently face in general population. The placement in protective custody was appropriate. Webb also said that given his history, Walker could genuinely believe his report of a serious, unprovoked assault, and it nevertheless simply be untrue.

Webb's review of Walker's complete medical chart from the Lee County Jail showed no evidence of any serious medical need that was ignored by the staff. The records reflected

Walker's complaints of the fungal infections listed in his complaint. While these infections are not serious medical conditions, Walker did receive treatment for them while in the jail.

Walker did not testify.

Walker failed to prove that he was subjected to excessive use of force; that he sustained injuries as a result of the use of force; and/or that his serious medical needs were met with deliberate indifference. Having failed to prove the elements of any of his claims, the undersigned recommends that the complaint be dismissed with prejudice.

The parties are referred to 28 U.S.C. § 636(b)(1) and Local Rule 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Plaintiff is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 27th day of July, 2010.

/s/ Jerry A. Davis
U. S. MAGISTRATE JUDGE